1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   TYSHEIKA OGBUEHI,                      No.  2:13-cv-00672-KJM-KJN

12               Plaintiff,

13        v.

14   COMCAST OF CALIFORNIA/                 ORDER
     COLORADO/FLORIDA/OREGON,
15   INC.,

16               Defendant.

17

18              Before the court is plaintiff Tysheika Ogbuehi's ("plaintiff") unopposed motion

19   for an order preliminarily approving a class settlement and provisionally certifying the settlement

20   class.  ECF No. 21.  The court submitted the motion without oral argument.  ECF No. 23.  After

21   carefully considering the motion and the applicable law, the court GRANTS plaintiff's motion for

22   the reasons set forth below.

23   I.       FACTUAL AND PROCEDURAL BACKGROUND

24              This case arises from the alleged failure of defendant Comcast Cable

25   Communications Management, LLC (incorrectly named as Comcast of California/Colorado/

26   Florida/Oregon, Inc.) ("defendant") to properly compensate plaintiff and other employees under

27   the Fair Labor Standards Act ("FLSA"), the California Labor Code, California Industrial Welfare

28   Commission order provisions and the California Business and Professions Code.

                                              1

On April 5, 2013, defendant initiated this action in this court by filing a notice of removal of plaintiff's first amended class action complaint for damages against defendant. ECF No. 1; *see also* ECF No. 1-2. On April 9, 2014, the parties stipulated to granting plaintiff leave to file a second amended complaint. ECF No. 14. The court approved the stipulation on April 11, 2014, ECF No. 15, and plaintiff filed her second amended complaint on that date. ECF No. 16.

The second amended complaint alleges as follows. Plaintiff and other similarly situated employees were employed in the position of Virtual Customer Account Executive with defendant. Second Am. Compl. ("SAC") ¶ 4, ECF No. 16. In this position, the employees primarily worked from home. *Id.* Defendant classified plaintiff and other Virtual Customer Account Executives as non-exempt, hourly employees. *Id.* ¶ 11. Plaintiff and other employees worked more than eight hours in a day and more than forty hours in a workweek, but defendant failed to pay them overtime wages. *Id.* Defendant also required Virtual Customer Account Executives to work "off the clock" but did not pay them for this work. *Id.* Plaintiff brings nine separate claims for relief: (1) failure to indemnify in violation of the California Labor Code; (2) failure to provide meal periods in violation of the California Labor Code; (3) failure to provide rest periods in violation of the California Labor Code; (4) failure to pay wages in violation of the FLSA; (5) failure to pay employees minimum and overtime wages for all hours worked in violation of the California Labor Code; (6) failure to pay waiting time penalties in violation of the California Labor Code; (7) failure to provide accurate written wage statements in violation of the California Labor Code; (8) unfair competition under the California Business & Professions Code; and (9) recovery of civil penalties under the California Labor Code. SAC at 10–26.

On July 11, 2014, following the parties' participation in private mediation, plaintiff filed the instant motion for preliminary approval of class action settlement. ECF No. 21.

II.      STANDARDS AND PROCESS FOR CLASS SETTLEMENT APPROVAL

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'" *In re Bluetooth Headset Prods. Liab. Litig.* (*Bluetooth*), 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1026 (9th Cir. 1998)).  To protect absent class members' due process rights, Rule 23(e) of the

Federal Rules of Civil Procedure permits a class action to be settled "only with the court's

approval" "after a hearing and on a finding" the agreement is "fair, reasonable, and adequate."

Moreover, if "the 'settlement agreement is negotiated prior to formal class certification,'" then

"'there is an even greater potential for a breach of fiduciary duty owed the class.'"  *Radcliffe v.

Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (alteration omitted) (emphasis

omitted) (quoting *Bluetooth*, 654 F.3d at 946).  "Accordingly, such agreements must withstand an

even higher level of scrutiny for evidence of collusion or other conflicts than is ordinarily

required under Rule 23(e) before securing the court's approval as fair."  *Bluetooth*, 654 F.3d at

946 (citations omitted).  "Judicial review must be exacting and thorough."  MANUAL FOR

COMPLEX LITIGATION (FOURTH) § 21.61 (2004).

   "Review of a proposed class action settlement generally involves two hearings."

*Id.* § 21.632.  First, the parties submit the proposed terms of the settlement so the court can make

"a preliminary fairness evaluation," and if the parties move "for both class certification and

settlement approval, the certification hearing and preliminary fairness evaluation can usually be

combined."  *Id.*  Then, "[t]he judge must make a preliminary determination on the fairness,

reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of

the certification, proposed settlement, and the date of the final fairness hearing."  *Id.*  After the

initial certification and notice to the class, the court then conducts a second fairness hearing

before finally approving any proposed settlement.  *Narouz v. Charter Commc'ns, LLC*, 591 F.3d

1261, 1267 (9th Cir. 2010).

   Regarding class certification, the parties' stipulation that the class should be

certified is not sufficient; instead the court must pay "undiluted, even heightened, attention" to

class certification requirements.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *but

see* NEWBERG ON CLASS ACTIONS § 11:28 (4th ed.) ("Since *Amchem*, approval of settlement

classes is generally routine and courts are fairly forgiving of problems that might hinder class

certification were the case not to be settled." (collecting cases)).  Regarding notice to the class,

the court must ensure the class members "receive 'the best notice that is practicable under the

1  circumstances.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (quoting FED. R.

2  CIV. P. 23(c)(2)(B)).

3  III.      ANALYSIS

4          A.      Class Certification

5                  Plaintiff seeks certification of the following class for settlement purposes:

6                  [A]ll persons employed by Comcast in the State of California from
                   February 26, 2009 through and including the implementation of the
7                  California Call Center Closure, who held positions as Virtual
                   Customer Account Executives, and were not paid a severance
8                  payment that was offered as a result of the California Call Center
                   Closure.

9

10  Spivak Decl. Ex. 1, ¶ 2.7, ECF No. 21-2 ("Settlement Agreement").  "The Class includes the

11  estates of such persons and, if any such person is incompetent or deceased, the legal

12  representative or successor in interest as evidenced by reasonable verification."  *Id.*

13                  A party seeking to certify a class must demonstrate that it has met the requirements

14  of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Amchem*, 521 U.S. at 614; *Ellis*

15  *v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).  Although the parties in this

16  case have stipulated that a class exists for purposes of settlement, the court must nevertheless

17  undertake the Rule 23 inquiry independently, both at this stage and at the later fairness hearing.

18  *West v. Circle K Stores, Inc.*, No. CIV. S–04–0438 WBS GGH, 2006 WL 1652598, at *2 (E.D.

19  Cal. June 13, 2006).

20                  Under Rule 23(a), before certifying a class, the court must be satisfied that:

21                  (1) the class is so numerous that joinder of all members is
                   impracticable (the "numerosity" requirement); (2) there are
22                 questions of law or fact common to the class (the "commonality"
                   requirement); (3) the claims or defenses of representative parties are
23                 typical of the claims or defenses of the class (the "typicality"
                   requirement); and (4) the representative parties will fairly and
24                 adequately protect the interests of the class (the "adequacy of
                   representation" requirement).
25

26  *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting *In re Itel*

27  *Sec. Litig.*, 89 F.R.D. 104, 108 (N.D. Cal. 1981)); *accord* FED. R. CIV. P. 23(a).

28  /////

4

1    The court must also determine whether the proposed class satisfies Rule 23(b)(3),

2    on which plaintiff relies in this action.  To meet the requirements of this subdivision of the rule,

3    the court must find "'questions of law or fact common to class members predominate over any

4    questions affecting only individual members, and that a class action is superior to other available

5    methods for fairly and effectively adjudicating the controversy.'"  *Dukes*, 131 S. Ct. at 2558

6    (quoting Fed. R. Civ. P. 23(b)(3)).  "The matters pertinent to these findings include: (A) the class

7    members' interests in individually controlling the prosecution or defense of separate actions;

8    [and] (B) the extent and nature of any litigation concerning the controversy already begun by or

9    against class members . . . ."  Fed. R. Civ. P. 23(b)(3)(A)–(B).

10    1.    Numerosity

11    Although there is no absolute numerical threshold for numerosity, courts have

12    approved classes consisting of thirty-nine, sixty-four and seventy-one plaintiffs.  *Murillo v. Pac.*

13    *Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cnty.*, 669 F.2d

14    1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810).  When a class size is small,

15    courts consider factors such as "the geographical diversity of class members, the ability of

16    individual claimants to institute separate suits, and whether injunctive or declaratory relief is

17    sought."  *Jordan*, 669 F.2d at 1319.

18    Here, plaintiff states the potential class consists of approximately eighty-eight

19    Virtual Customer Account Executives employed by defendant.  Pl.'s Mem. P. & A. in Supp. Mot.

20    Prelim. Approval Class Settlement ("Mem.") at 16, ECF No. 21-1.  Plaintiff argues numerosity is

21    satisfied "[b]ecause it would be impracticable to join" the potential class members with relatively

22    small claims "as plaintiffs in a single lawsuit."  *Id.* at 16.

23    The judicial efficiency of addressing class claims in one action weighs in favor of

24    class certification.  *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th

25    Cir. 1967) (explaining "impracticability does not mean impossibility but only the difficulty or

26    inconvenience of joining all members of the class" (internal quotations and citation omitted)); *see*

27    *also McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670,

28    673–76 (W.D. Wash. 2010) (finding numerosity satisfied for class of twenty-seven members after

1  considering several factors including judicial economy and the ability of the members to file

2  individual suits).  Accordingly, the numerosity requirement has been met.

3          2.        Commonality

4          To satisfy the commonality requirement, plaintiff must do more than show class

5  members "have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551.

6  The claims must depend upon a common contention that "must be of such a nature that it is

7  capable of classwide resolution—which means that determination of its truth or falsity will

8  resolve an issue that is central to the validity of each one of those claims in one stroke." *Id.*  It is

9  not so much that the class raises common questions: what is necessary is "'the capacity of a

10 classwide proceeding to generate common answers . . . .'" *Id.* (emphasis omitted).  "[T]he merits

11 of the class members' substantive claims are often highly relevant when determining whether to

12 certify a class." *Ellis*, 657 F.3d at 981.

13         Here, plaintiff argues the common question shared by potential class members

14 includes, *inter alia*, whether they were not compensated for preliminary and postliminary work,

15 provided with accurate written wage statements, timely paid earned wages and failed to receive

16 meal and rest breaks or mileage reimbursement.  Mem. at 16–17.  All the potential class members

17 were employed by defendant as Virtual Customer Account Executives and were allegedly subject

18 to the same general wage and hour policies.  *Id.* at 16.  If the policies are unlawful, each class

19 member will have been injured by defendant's conduct.  This satisfies the requirement that

20 plaintiff's claims "depend upon a common contention . . . [that is] of such a nature that it is

21 capable of classwide resolution." *Dukes*, 131 S. Ct. at 2551.  Accordingly, the commonality

22 requirement has been met.

23         3.        Typicality

24         "'[T]he commonality and typicality requirements of Rule 23(a) tend to merge'"

25 because both act "'as guideposts for determining whether under the particular circumstances

26 maintenance of a class action is economical and whether the named plaintiff's claim and the class

27 claims are so interrelated that the interests of the class members will be fairly and adequately

28 protected in their absence.'" *Dukes*, 131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co. of Sw. v.*

1   *Falcon*, 457 U.S. 147, 157–58 n.13 (1982)).  A court resolves the typicality inquiry by

2   considering "whether other members have the same or similar injury, whether the action is based

3   on conduct which is not unique to the named plaintiffs, and whether other class members have

4   been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (internal quotations and

5   citation omitted); *Morales v. Stevco, Inc.*, No. 1:09–cv–00704 AWI JLT, 2011 WL 5511767, at

6   *6 (E.D. Cal. Nov. 10, 2011).  In this case, the potential class members had similar job duties and

7   were similarly subject to defendant's alleged failure to "pay minimum and overtime wages for

8   off-the-clock work, provide meal and rest breaks, and reimburse Virtual [Customer Account

9   Executives] for mileage incurred in driving to [d]efendant's call centers." Mem. at 17.  This

10  satisfies the typicality inquiry. *See Murillo*, 266 F.R.D. at 475.

11          4.       Adequacy of Representation

12          To determine whether the named plaintiff will protect the interests of the class, the

13  court must explore two factors: (1) do the named plaintiff and her counsel have any conflicts of

14  interest with the class as a whole, and (2) have the named plaintiff and counsel vigorously

15  pursued the action on behalf of the class. *Hanlon*, 150 F.3d at 1020 (citation omitted); *see also*

16  *True v. Am. Honda Motor Co., Inc.*, No. EDCV 07–287–VAP (OPx), 2009 WL 838284, at *5

17  (C.D. Cal. Mar. 25, 2009) ("(1) the class representative must not have interests antagonistic to the

18  unnamed class members, and (2) the representative must be able to prosecute the action

19  'vigorously through qualified counsel'" (quoting *Lerwill v. Inflight Motion Pictures, Inc.*,

20  582 F.2d 507, 512 (9th Cir. 1978))).

21          Nothing in the papers presently before the court suggests the representative

22  plaintiff has any conflicts of interest with the other class members. *See* Mot. at 21.  Because

23  plaintiff's claims appear to be "completely aligned with [that] of the class," the court concludes at

24  this stage there is no conflict. *Collins*, 274 F.R.D. at 301.

25          With regard to the second factor, "[a]lthough there are no fixed standards by which

26  'vigor' can be assayed, considerations include competency of counsel and, in the context of a

27  settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*,

28  150 F.3d at 1021.  In addition, a named plaintiff will be deemed to be adequate "as long as the

1  plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions

2  based upon [the plaintiff's] lawyers' advice . . . ." *Kaplan v. Pomerantz*, 131 F.R.D. 118, 122

3  (N.D. Ill. 1990).

4          Plaintiff's counsel provide a description of their experience in wage and hour

5  litigation, including class action lawsuits.  Spivak Decl. ¶¶ 23–30, ECF No. 21-2; Haines Decl.

6  ¶ 3, ECF No. 21-3.  Plaintiff's counsel also describes the effort expended on this action thus far,

7  which includes investigation into the strengths and weaknesses of the class claims and

8  participation in private settlement negotiations with a "highly regarded mediator after sufficient

9  discovery was exchanged."  Spivak Decl. ¶ 33.  Additionally, plaintiff herself has participated in

10  the litigation process, *see, e.g.*, *id.* ¶ 49, which is a relevant factor to determining the adequacy of

11  representation.  *See Sepulveda*, 237 F.R.D. at 244.  These representations support a finding of

12  vigor.  At least at this stage of the settlement-approval process, plaintiff is an adequate class

13  representative.  *See Falcon*, 457 U.S. at 160 (observing that finding of adequacy "particularly

14  during the period before any notice is sent to members of the class 'is inherently tentative'"

15  (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978))).

16          5.      Predominance

17          "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

18  sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.

19  Although predominance is similar to Rule 23(a)'s commonality requirement, it is more

20  demanding.  *Id.* at 623–24.  To determine whether common questions predominate, the court

21  must consider "the relationship between the common and individual issues" by looking at the

22  questions that preexist any settlement.  *Hanlon*, 150 F.3d at 1022.  The predominance inquiry

23  focuses on the "notion that the adjudication of common issues will help achieve judicial

24  economy."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir.

25  2009) (internal quotations and citations omitted).

26          Here, plaintiff argues the answers to the predominant common questions shared by

27  the class members "will resolve [d]efendant's alleged liability to Class Members except with

28  respect to the amounts of damages to be awarded . . . ."  Mem. at 19.  Plaintiff's motion

8

1    demonstrates "[a] common nucleus of facts and potential legal remedies dominates this

2    litigation." *Hanlon*, 150 F.3d at 1022.  This action turns on whether defendant failed to

3    compensate Virtual Customer Account Executives for, *inter alia*, overtime, meal and rest period

4    breaks and mileage.  While each class member will be entitled to damages according to the

5    duration of their employment with defendant, "'individual issues regarding damages will not, by

6    themselves, defeat certification under Rule 23(b)(3).'"  *Murillo*, 266 F.R.D. at 477 (quoting *West*,

7    2006 WL 1652598, at *7–8).  Accordingly, the predominance requirement has been met.

8              6.        Superiority

9             In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class

10   members' interests in pursuing separate actions individually, any litigation already in progress

11   involving the same controversy, the desirability of concentrating the litigation in one forum, and

12   potential difficulties in managing the class action, although the last two considerations are not

13   relevant in the settlement context.  *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616 AWI–

14   SKO, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012) ("In the context of settlement,

15   however, the third and fourth factors are rendered moot and are not relevant . . . . because the

16   point is that there will be no trial . . . ." (citing *Amchem*, 521 U.S. at 620)).

17            Here, plaintiff argues the superiority requirement is met because "[m]ost of the

18   Class Members stand to recover damages in relatively small amounts."  Mem. at 19 (citing *Local

19   Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163

20   (9th Cir. 2001)).  Plaintiff further argues the class members "have no particular interest in

21   individually controlling the prosecution of separate actions" and any class member "who wants to

22   pursue a claim for a greater amount can request exclusion from the Settlement."  Mem. at 20;

23   Spivak Decl. ¶ 32.  Finally, plaintiff states there is "no competing litigation regarding the claims

24   in this case."  Mem. at 20.

25            As noted, if each class member brings a separate action, each claim would be

26   similar in nature and individual claims will tax individual resources of the members as well as

27   judicial resources.  Moreover, considering each claim is for a relatively small amount in relation

28   to the cost of litigating the claims, the desire of any one plaintiff or claimant to control the lawsuit

1   would likely be small.  In light of these factors and the arguments presented by plaintiff, a class

2   action is superior to individual resolution of the wage and hour claims.

3         B.     Preliminary Fairness Determination

4             1.     Proposed Settlement Agreement

5         The proposed settlement agreement contains the following provisions.  Defendant

6   has the right to terminate and withdraw from the settlement at any time prior to final approval if,

7   *inter alia*, "more than 10% of the Settlement Class Members opt-out of the Settlement."

8   Settlement Agreement ¶ I.  Defendant "denies all claims as to liability, damages, penalties,

9   interest, fees, restitution, injunctive relief and all other forms of relief as well as the class

10   allegations asserted in the Lawsuit."  *Id.*  The parties intend the settlement "to fully, finally, and

11   forever resolve, discharge, and settle the Released State Law Claims and Released Federal Law

12   Claims."  *Id.*

13         The class is defined as:

14
15
16
17
18

> [A]ll persons employed by Comcast in the State of California from February 26, 2009 through and including the implementation of the California Call Center Closure, who held positions as Virtual Customer Account Executives, and were not paid a severance payment that was offered as a result of the California Call Center Closure. The Class includes the estates of such persons and, if any such person is incompetent or deceased, the legal representative or successor in interest as evidenced by reasonable verification.

19   *Id.* ¶ 2.7.  The "California Call Center Closure" is defined as "Comcast's closure of all California

20   Call Center locations, including Livermore, Morgan Hill, Concord, Stockton, and Natomas, as of

21   November 30, 2012, and the separation from employment of all California Call Center employees

22   who reported to those Call Center locations, including Virtual Customer Account Executives, as a

23   result of that closure."  *Id.* ¶ 2.4.  The "Gross Settlement Amount" is the sum of $100,000 and

24   includes attorneys' fees, litigation expenses, claims administrator costs, penalties recovered under

25   /////

26   /////

27   /////

28   /////

the Private Attorneys General Act (PAGA), all settlement payments to class members and the class representative's enhancement payment. *Id.* ¶ 2.17. The "Net Settlement Fund" is defined as

> [T]he Gross Settlement Amount less the Attorneys' Fees, Litigation Expenses, Claims Administration Costs, the PAGA Penalty Payment, and the Service Enhancement Payment to the Class Representative. To the extent the Court does not approve the full requested Attorneys' Fees, Litigation Expenses, Service Enhancement Payment, or Claims Administration Costs, the Net Settlement Fund will increase.

*Id.* ¶ 2.23.

The settlement agreement provides defendant will pay $2,500 from the Gross Settlement Amount as penalties recovered under the PAGA. *Id.* ¶ 8.3. The payment penalty will be allocated as follows: "$1,875 (75%) to the [California Labor and Workforce Development Agency] for the enforcement of labor laws and education of employers, and $625 (25%) to the Settlement Class Members on a *pro rata* basis." *Id.*

With regard to class member payments, the settlement agreement provides that "[e]ach individual Settlement Class Member's payment shall be calculated by counting the number of Work Weeks all Settlement Class Members worked during the period from February 26, 2009 through and including the California Call Center Closure (which becomes the denominator), and the number of Work Weeks each of these employees worked during the period from February 26, 2009 through and including the California Call Center Closure (which becomes the numerator), and multiply this by the Net Settlement Fund amount." *Id.* ¶ 8.4. Class members shall also receive their *pro rata* share of the PAGA penalty payment. *Id.*

With regard to an enhancement award, class counsel will submit an application for a $5,000 enhancement award for the class representative. *Id.* ¶ 8.5. Defendant will not oppose the application. *Id.* With regard to costs and attorneys' fees, the settlement agreement provides class counsel will submit an application for an award of attorneys' fees of no more than approximately 33.33% of the maximum settlement amount of $100,000 and not more than $10,000 in litigation expenses. *Id.* ¶ 9.1. Defendant will not oppose the motion for approval of attorneys' fees and litigation expenses. *Id.* The settlement agreement also provides for the

1   payment of $5,000 from the gross settlement amount for claims administration costs.  *Id.* ¶¶ 9.3,

2   10.1.

> In the event that the Court (or any appellate court) awards less than the amount requested for Attorneys' Fees, Litigation Expenses, and/or the Service Enhancement Payment, only the awarded amounts shall be paid and shall constitute satisfaction of those obligations and full payment thereunder, and any remaining or un-awarded portion of the requested Attorneys' Fees, Litigation Expenses, and/or the Service Enhancement Payment shall be part of the Net Settlement Fund to be allocated to the Settlement Class Members on a *pro rata* basis based on the number of Work Weeks. In the event that the Court does not approve any or all of the Attorneys' Fees, Litigation Expenses, and/or the Service Enhancement Payment sought by Plaintiff or Class Counsel, the Settlement shall remain binding except as otherwise provided, and this will not be a justification for Plaintiff to withdraw from the Settlement.

11   *Id.* ¶ 9.4.  Further, "[i]f the actual cost of claims administration is less than the amount approved

12   by the Court, those funds shall be part of the Net Settlement Fund to be allocated to the

13   Settlement Class Members on a *pro rata* basis based on number of Work Weeks."  *Id.* ¶ 10.1.

14   Following the court's final approval of the settlement, the claims administrator

15   shall mail payment checks to class members.  The settlement agreement provides as follows with

16   regard to negotiation of the payment checks:

> Any checks issued to Settlement Class Members shall remain negotiable for a period of one hundred eighty (180) days from the date of mailing. Settlement Class Members who fail to negotiate their check(s) in a timely fashion shall remain subject to the terms of the Settlement, the Released Claims, and final Approval Order from the Court. The funds associated with any checks which are not timely negotiated shall be paid to the *cy pres* beneficiary, The United Way of the Bay Area, within two hundred (200) days from the date of mailing the Settlement Payment checks.

22   *Id.* ¶ 11.5.

23   The settlement agreement provides for a release of state law claims and federal

24   claims.  *Id.* ¶¶ 12.1–12.2.  "All Class Members shall be bound by th[ese] release[s] unless they

25   formally opt-out of [the] Settlement by submitting a valid and timely Request for Exclusion."  *Id.*

26   "The State Law Released Claims expressly exclude all unrelated claims including but not limited

27   to claims for retaliation, discrimination, unemployment insurance, disability, workers'

28   compensation and claims outside the Class Period which are not released."  *Id.* ¶ 12.1.  The

settlement agreement contains a separate release provision for the class representative. *Id.* ¶ 12.3. "Class Representative and Class Counsel agree to waive appeals of an order granting final approval of this Settlement or entering judgment in this Lawsuit as to Comcast so long as such order is consistent with the material terms of" the settlement agreement. *Id.* ¶ 15.4.

Finally, the settlement agreement provides "[t]he Parties agree the Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Stipulation." *Id.* ¶ 17.6.

2.      Discussion

"At this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).  The following factors bear on the inquiry:

> i.      the strength of the plaintiffs' case;
>
> ii.     the risk, expense, complexity, and likely duration of further litigation;
>
> iii.    the risk of maintaining class action status throughout the trial;
>
> iv.     the amount offered in settlement;
>
> v.      the extent of discovery completed, and the stage of the proceedings;
>
> vi.     the experience and views of counsel; . . . and
>
> vii.    the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citation omitted).  The court must also consider the value of the settlement offer and whether the settlement is the result of collusion. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).  At the preliminary approval stage, the "initial evaluation can be made on the basis of information [contained in] briefs, motions, or informal presentations by parties," MANUAL FOR COMPLEX LITIGATION, *supra*, § 21.632, and "the [c]ourt need not review the settlement in detail at this time . . . ." *Durham v. Cont'l Cent. Credit, Inc.*, No. 07cv1763 BTM (WMc), 2011 WL 90253, at *2 (S.D. Cal. Jan. 10, 2011) (citing NEWBERG,

1    *supra*, § 11.25).  The court may not "'delete, modify or substitute certain provisions.'"  *Hanlon*,

2    150 F.3d at 1026 (quoting *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S.F.*,

3    688 F.2d 615, 630 (9th Cir. 1982)).  "The settlement must stand or fall in its entirety."  *Id.*

4    (citation omitted).

5          The court has reviewed the proposed settlement's terms and the moving papers

6    and finds the settlement terms are, at this stage of the action, "'within the range of possible

7    approval.'"  *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux*, 690 F.2d at 621 n.3).  The parties

8    reached a settlement following participation in private mediation before Mark Rudy who is

9    represented as a "respected mediator with extensive experience in wage and hour class actions."

10    Spivak Decl. ¶ 14.  Participation in mediation "tends to support the conclusion that the settlement

11    process was not collusive."  *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA

12    (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citation omitted).  It appears the

13    settlement is a result of informed and non-collusive negotiations between the parties.

14          With regard to the extent of discovery, "'formal discovery is not a necessary ticket

15    to the bargaining table.'"  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

16    (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Plaintiff's counsel

17    states the parties arrived at the settlement after conducting substantial informal discovery, which

18    included "(i) the production of Defendant's written company policies with respect to the various

19    wage and hour issues in this case that applied to Class Members; (ii) production of Defendant's

20    written training materials; (iii) emails; and (iv) extensive interviews with Plaintiff."  Spivak Decl.

21    ¶ 13.  The informal discovery facilitated a review of "the relative strengths and weaknesses" of

22    each party's respective cases and defendant's estimated exposure.  *Id.* ¶ 33.  While it does not

23    appear extensive discovery was conducted, the court is satisfied at this stage that the discovery

24    enabled the parties to reach a meaningful settlement agreement.

25          Finally, as detailed in plaintiff's motion, the strength of plaintiff's case and the risk

26    of maintaining class certification weigh in favor of preliminary approval.  *See* Mem. at 21–25.

27    For example, class counsel's initial estimated class size of 294 was reduced to 88 after learning

28    from defendant it "obtained release of all claims from all but 30% of the Class Members, as a

1   result of the California Call Center Closure." *Id.* at 21.  Class counsel also learned the actionable

2   time period "was limited to a period of only 28 months" as a result of a related wage and hour

3   class action involving defendant and individuals employed as Customer Account Executives,

4   including Virtual Customer Account Executives, at defendant's California call centers.  Mem. at

5   10, 21–22 (referencing United States District Court for the Northern District of California class

6   action of *Blouin v. Comcast Corp.*, Case No. 3:08–cv–04787–MEJ); *see also* Spivak Decl. Exs.

7   2–3 (*Blouin* case documents).  Plaintiff summarizes the potential risks she faces in this action as

8   follows:

9
10
11
12
13
14
15
16
17
18

> (i) the risk that Defendant would be able to prove that, as a matter of practice, it provided meal and rest breaks; (ii) the risk that Plaintiff would be unable to prove that Defendant acted with the requisite scienter to justify awards of statutory penalties under California Labor Code §§ 203 and 226(e); (iii) the risk that Plaintiff would face difficulties in recovering substantial civil penalties based on the discretion this Court has under the PAGA to reduce them; (iv) the risk that class members would obtain considerably smaller recoveries if no penalties are recovered (i.e., Plaintiff failed to show Defendant's conduct was willful and intentional under Labor Code §§ 203 and 226, respectively) and relief is limited to the underlying restitution for overtime hours, mileage expenses, and meal and rest premiums; (v) the risk that Defendant would be able to defeat class certification based on variations in the experiences of absent Class Members; and (vi) the risk that Defendant will garner additional releases from putative Class Members before trial (presenting dangers to Plaintiff's ability to proceed with a class action even if initially certified).

19   Mem. at 22; *see also* Spivak Decl. ¶ 35.  The court notes defendant "specifically and generally

20   denies any and all liability or wrongdoing of any sort with regard to any of the Alleged Claims"

21   and "would oppose class certification" if the case proceeded.  Settlement Agreement ¶ IV.  As

22   "the [c]ourt need not perform a full fairness analysis at this time because it will be done in

23   connection with the [final] fairness hearing," *Nieves v. Cmty. Choice Health Plan of Westchester,*

24   *Inc.*, No. 08 CV 321 (VB)(PED), 2012 WL 857891, at *5 (S.D.N.Y. Feb. 24, 2012), plaintiff's

25   representations are sufficient for preliminary approval.

26           The parties are advised, however, the court in its discretion does not plan to

27   maintain jurisdiction to enforce the terms of the parties' settlement agreements.  *Kokkonen v.*

28   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *cf. Collins v. Thompson*, 8 F.3d 657,

659 (9th Cir. 1993).  Unless there is some independent basis for federal jurisdiction, enforcement of the agreements is for the state courts.  *Kokkonen*, 511 U.S. at 382.

### 3.    Court's Reservations

The court's preliminary approval is not without reservations.  As noted, when a settlement is reached prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement."  *Bluetooth*, 654 F.3d at 946. "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest . . . before securing the court's approval as fair."  *Id.* (citations omitted).  That the parties came to terms during private mediation with an experienced mediator, although "a factor weighing in favor of a finding of non-collusiveness," is "not on its own dispositive."  *Id.* at 948, 939 (reversing district court's approval of a class settlement even though settlement was reached during a "formal mediation session, overseen by a retired California Court of Appeal Justice").  Signs of collusion include: (1) "when counsel receive a disproportionate distribution of the settlement," *id.* at 947; (2) when the settlement agreement contains a "clear sailing" arrangement, as here, in which defendant agrees not to contest the class counsels' application for attorneys' fees, "which carries [with it] 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class,'" *id.* (quoting *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000)); and (3) when, as here, the class representative receives an enhancement payment that is much higher than payments unnamed class members stand to receive from the settlement, *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003).

#### a.    Attorneys' Fees

With regard to attorneys' fees, as noted, class counsel intend to seek fees of not more than approximately 33.33% of the total settlement amount of $100,000.  "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."  *Bluetooth*, 654 F.3d at 942 (citation omitted).  If the court employs the percentage-of-recovery method, "calculation of the lodestar amount may be used as a cross-check to assess the reasonableness of the percentage

16

1    award." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012).  The court must

2    employ the method that will produce a reasonable result.  *Bluetooth*, 654 F.3d at 942.  When

3    applying the percentage-of-recovery method, "[t]he typical range of acceptable attorneys' fees in

4    the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the

5    benchmark." *Morales*, 2011 WL 5511767, at *12 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256

6    (9th Cir. 2000)).

7          The court notes any attorneys' fees not awarded by the court will become part of

8    the net settlement fund to be allocated to the class members and the settlement shall remain

9    binding in the event the court does not approve any or all of the attorneys' fees.  Settlement

10   Agreement ¶ 9.4.  Class counsel argue a 33.33 percent fee request is fair, adequate and reasonable

11   under the percentage of the fund approach because the amount is less than the amount class

12   counsel would receive "if they individually represented each class member under their regular

13   contingency fee agreements that authorize fees of up to 40% of the ultimate recovery."  Mem. at

14   25; Spivak Decl. ¶ 47.  Class counsel "agree to submit their hours for purposes of a lodestar

15   cross-check consistent with this Court's requirements . . . ."  Mem. at 25.

16         Because 33.33 percent is within the accepted range set forth by the Ninth Circuit,

17   the fee amount proposed is approved preliminarily.  However, the court is concerned with the

18   request considering the benchmark for such an award is 25 percent, the settlement was reached

19   during an early stage of litigation, and that counsel has a "clear sailing" agreement with

20   defendant.  *Bluetooth*, 654 F.3d at 942, 947.  Here, it is possible the lodestar method will produce

21   a more reasonable result than the percentage-of-recovery method.  Therefore, as confirmed by

22   counsel in the motion for preliminary approval, plaintiff's counsel must provide the court with the

23   information to permit the court to perform a lodestar cross-check.  The report must contain a

24   detailed description of each task completed, the number of hours spent on each task, when the

25   work was completed, who performed the work, each person's hourly rate and the total number of

26   hours worked.

27   /////

28   /////

17

b.      Enhancement Award

With regard to the $5,000 enhancement award plaintiff intends to request as class representative, "[e]nhancements for class representatives are not to be given routinely." *Morales*, 2011 WL 5511767, at *12. "Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.'" *Staton*, 327 F.3d at 975 (alteration in original) (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989)). To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.* at 977.

As noted, if the court awards less than the amount requested for the enhancement payment, any remaining amount will become part of the net settlement fund and the settlement will remain binding on the parties. Settlement Agreement ¶ 9.4. Plaintiff argues an enhancement award in the amount of $5,000 is appropriate in light of plaintiff's time and effort expended on behalf of the class and for exposing herself to the significant risks of litigation. Mem. at 26. Plaintiff further argues "the value of this award, if approved, is only about 5% of the total amount, is fair compensation to Plaintiff, and is justified" for several reasons. *Id.* at 27. Plaintiff's reasons include the fact she agreed, *inter alia*, to consider the interests of the class as she would consider her own, actively participate in the action as necessary, follow the progress of the action and "champion" others with similar claims. *Id.*; *see also* Spivak Decl. ¶ 49. Class counsel claim plaintiff provided "detailed descriptions of how Defendant's business operates, and the hours and scheduling of the employees" as well as assisted class counsel "extensively by spending considerable amounts of time working with them to develop and investigate the claims, meeting with her counsel in person and by phone, gathering witness identities and contact information, and connecting them with Class Counsel for interviews, and participating in the mediation session." Mem. at 28–29. At this stage, given the low bar plaintiff must surpass, the enhancement award will be preliminarily approved.

18

However, the approval is not without reservation in light of the five percent of the maximum settlement amount plaintiff intends to seek. *See, e.g.*, *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462–63 (E.D. Cal. 2013) (finding proposed enhancement award of 1.8 percent of the total settlement amount inappropriate and awarding an incentive fee of approximately .62 percent of the total settlement for the purpose of preliminary approval). Final approval of any enhancement award will be subject to an evaluation of relevant factors "'includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (alteration in original) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

While class counsel summarized the services plaintiff either provided or was willing to provide during the pendency of the action, *see* Mem. at 26–29; *see also* Spivak Decl. ¶ 43, the generalized summary is not sufficient to enable the court to make a well-informed decision regarding approval of plaintiff's proposed enhancement award. Prior to final approval, plaintiff must provide a detailed declaration describing her current employment status, any risks she faced as class representative, specific activities she performed as class representative and the amount of time she spent on each activity.

c.   Negotiations

While lead class counsel provides a detailed summary of his investigations and estimated exposure to liability in his declaration, *see* Spivak Decl. ¶¶ 33–34, the court will require more detailed evidence concerning the mediation and negotiations of the proposed settlement agreements. For example, Mr. Spivak's declaration states defendant revealed during mediation it obtained releases from all but approximately thirty percent of the class members and class counsel learned the actionable time period was limited due to the related *Blouin* class action. *Id.* ¶ 34. Mr. Spivak also indicates he estimated defendant's maximum possible liability to the remaining eighty-eight class members to be $443,965.03. *Id.* The court requires information relating to the parties' mediation to assess the reasonableness of the settlement and "understand

19

1   the nature of the negotiations."  MANUAL FOR COMPLEX LITIGATION, *supra*, § 21.6.  Accordingly,

2   the parties must provide information exchanged during their private mediation including, but not

3   limited to, mediation statements and any relevant communications during the parties'

4   negotiations.  To the extent the parties are concerned that disclosure of this information might

5   "reveal confidential information obtained by plaintiffs through mediation" (*id.* at 10 n.4), they

6   may request that the court review this information *in camera*.  *See Bowling v. Pfizer, Inc.*, 143

7   F.R.D. 138, 140 (S.D. Ohio 1992) (ordering "an *in camera* disclosure" of confidential

8   information concerning "all past settlements made by the Defendants involving the Bjork–Shiley

9   c/c heart valve"); MANUAL FOR COMPLEX LITIGATION, *supra*, § 21.631 ("A common practice is to

10  receive information . . . *in camera*.").[1]

11          Final approval will not issue without resolution of the court's concerns.  Because

12  the court finds that the settlement terms are, at this time, "'within the range of possible

13  approval,'" *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux*, 690 F.2d at 621 n.3), the court

14  GRANTS preliminary approval of the proposed settlement.

15          C.      Proposed *Cy Pres* Plan

16          The parties have designated a charity to receive any residual funds that are not

17  distributed through the class action settlement.  Because most class action settlements result in

18  unclaimed funds a plan is required for distributing those funds.  *Six Mexican Workers v. Ariz.*

19  *Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).  The alternatives available are *cy pres*

20  distribution, escheat to the government and reversion to the defendants.  *Six Mexican Workers*,

21  904 F.2d at 1307.

22          *Cy pres* distribution allows the distribution of unclaimed funds to indirectly benefit

23  the entire class.  *Id.* at 1305.  This requires the *cy pres* award to qualify as "the next best

24  distribution" to giving the funds directly to the class members.  *Dennis v. Kellogg Co.*, 697 F.3d

25  858, 865 (9th Cir. 2012).  "Not just any worthy charity will qualify as an appropriate *cy pres*

26  beneficiary[,]" there must be "a driving nexus between the plaintiff class and the *cy pres*

27

28          [1] For the parties' convenience, this order's conclusion sets forth the manner by which the parties may submit documents for *in camera* review by the court.

1    beneficiary." *Dennis*, 697 F.3d at 865 (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir.

2    2011)).  The choice of distribution options should be guided by the objective of the underlying

3    statute and the interests of the class members.  *Six Mexican Workers*, 904 F.2d at 1307.  A *cy pres*

4    distribution is an abuse of discretion if there is "no reasonable certainty" that any class member

5    would benefit from it.  *Dennis*, 697 F.3d at 865 (quoting *Six Mexican Workers*, 904 F.2d at 1308).

6             Here, the proposed settlement provides that any amount remaining will be

7    distributed for *cy pres* purposes to The United Way of the Bay Area.  Considering this action

8    involves employment issues related to compensation arising under the FLSA, the California

9    Labor Code, California Industrial Welfare Commission order provisions and the California

10    Business and Professions Code, it appears to be an appropriate plan for the unclaimed funds to be

11    directed to a charitable organization that supports members of the Bay Area community by

12    assisting them with, among other things, finding meaningful employment.  The court therefore

13    grants preliminary approval of the *cy pres* provision, but will require counsel at the final hearing

14    to address the "reasonable certainty" standard set forth above.

15        D.     Class Notice

16             For any class certified under Rule 23(b)(3), "the court must direct to class

17    members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

18    The notice must state in plain, easily understood language:

19             (i)     the nature of the action;

20             (ii)    the definition of the class certified;

21             (iii)   the class claims, issues, or defenses;

22             (iv)   that a class member may enter an appearance through an
attorney if the member so desires;

23

24             (v)    that the court will exclude from the class any member who
requests exclusion;

25             (vi)   the time and manner for requesting exclusion; and

26             (vii)  the binding effect of a class judgment on members under
Rule 23(c)(3).

27

28    *Id.*

The court has reviewed the proposed "Notice of Pendency Class Action Settlement and Final Hearing," Settlement Agreement Ex. A, and finds it fully conforms with due process and the applicable Rule. *See* Fed. R. Civ. P. 23(c)(2)(B). The proposed notice is appropriate because it adequately describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and will provide specific and sufficient information regarding the date, time and place of the final approval hearing. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126–27 (E.D. Cal. 2009).

The Claims Administrator retained by the parties to administer the settlement is Gilardi & Co. Settlement Agreement ¶¶ 2.5, 10.1. The notice procedure in section ten of the settlement agreement provides, in part:

> 10.3 <u>Claims Administration</u>. Comcast will provide the names, the last known residence address, the applicable employment dates, and the number of days on a leave of absence for each Class Member ("Class Data") to the Claims Administrator only. Comcast will provide the Class Data to the Claims Administrator no later than fifteen (15) days after the date the Court enters an order granting preliminary approval of the Settlement authorizing the Claims Administrator to send the Notice Packet . . . .

> 10.4 <u>Notice to Class Members</u>. As soon as practicable after receiving the Class Data, but no later than ten (10) days after its receipt, the Claims Administrator shall send via United States First Class Mail the Notice Packet to the Class Members. The Notice shall state that Class Members will have forty-five (45) days from the date the Notice is mailed to submit a Request for Exclusion or to object to the Settlement (the "Notice Period Deadline"). This timing is subject to Court approval. The costs of this Notice will be considered part of the Claims Administration Costs to be paid from the Gross Settlement Amount. Unless the Claims Administrator receives a Notice Packet returned from the United States Postal Service with a forwarding address for the recipient, that Notice Packet shall be deemed mailed and received by the Class Member to whom it was sent. In the event that subsequent to the first mailing of a Notice Packet and prior to the Notice Period Deadline, that Notice Packet is returned to the Claims Administrator by the United States Postal Service with a forwarding address for the recipient, the Claims Administrator shall re-mail the Notice Packet to that address within five (5) business days, the Notice Packet will be deemed mailed as of the date of re-mailing, the forwarding address shall be deemed the Updated Address for that Class Member, and any responses from the Class Member (i.e., a Request for Exclusion or an objection) are due to the Claims Administrator by the Notice Period Deadline or within twenty-one (21) days from the date of re-mailing, whichever is later. In the event that subsequent to the first mailing of a Notice Packet, the United States

Postal Service returns the Notice Packet to the Claims Administrator because the recipient's address is no longer valid, the Claims Administrator shall perform Reasonable Address Verification Measures in an effort to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Claims Administrator shall re-mail the Notice Packet within five (5) business days of receiving such information, the Notice Packet will be deemed mailed as of that date of remailing, the newly obtained address shall be deemed the Updated Address for that Class Member, and any responses from the Class Member (i.e., a Request for Exclusion or an objection) are due to the Claims Administrator by the Notice Period Deadline or within twenty-one (21) days from the date of re-mailing, whichever is later. If no Updated Address is obtained for that Class Member from a Notice Packet returned by the United States Postal Service, the Notice Packet shall be re-mailed to the Last Known Address within five (5) business days of receiving such information, the Notice Packet will be deemed mailed as of that date of re-mailing, and the Class Member shall have until the Notice Period Deadline to submit a response. In either event, the Notice Packet shall be deemed received when it is mailed for the second time under this paragraph.

*Id.* ¶¶ 10.3–10.4.

In light of the small class size and the notice to class members procedure set forth in the settlement agreement, the notice and the mode of delivery by mail is appropriate.

E.      Final Approval Hearing Schedule

The court adopts the following proposed schedule as set forth, in part, in plaintiff's proposed order on the motion for preliminary approval, ECF No. 21-4:

| Date | Event |
| --- | --- |
| 15 Days[2] | Deadline for defendant to provide to the claims administrator the following information as to each class member: (1) full name; (2) last known residence address; (3) applicable employment dates; and (4) the number of days on a leave of absence for each class member |
| 25 Days | Deadline for the claims administrator to mail notice packets to class members |

---

[2] The number of days as used here refers to the number of days after the date on which this order is filed.

23

| Date | Event |
|---|---|
| 70 Days | Deadlines for opting out of the settlement class and for objecting to the settlement |
| February 27, 2015 | Deadline for filing list of any opt-outs with the court |
| February 27, 2015 | Deadline for filing briefing in support of final approval of settlement |
| March 13, 2015, at 10:00 a.m. in Courtroom 3 | Hearing on final approval of settlement, award of plaintiffs' attorneys' fees and reimbursement of expenses, and such other matters as the court deems appropriate |

F.      Class Counsel

In light of counsels' experience in wage and hour class action litigation, the court appoints the Spivak Law Firm and the United Employees Law Group as class counsel.

IV.   CONCLUSION

For the foregoing reasons,

1.  The Spivak Law Firm and the United Employees Law Group are appointed as class counsel.

2.  Preliminary certification of the following class and collective action is granted:

> [A]ll persons employed by Comcast in the State of California from February 26, 2009 through and including the implementation of the California Call Center Closure [on November 30, 2012], who held positions as Virtual Customer Account Executives, and were not paid a severance payment that was offered as a result of the California Call Center Closure. The Class includes the estates of such persons and, if any such person is incompetent or deceased, the legal representative or successor in interest as evidenced by reasonable verification.

3.  Preliminary approval of the settlement is granted.

4.  Approval of the proposed notice is granted.

5.  The proposed hearing schedule is adopted as set forth above.

6. Class counsel and plaintiff shall file a motion for attorney's fees, costs, and class representative payment by December 1, 2014.

To the extent a party wishes to submit documents for *in camera* review to facilitate the final fairness determination under Rule 23, those submissions should be filed in the following manner. The party shall submit the documents "for conventional filing or lodging" in accordance with E.D. Cal. Local Rule 130(b), and notice of the *in camera* submission shall be served on all parties. The notice and conventional filing or lodging shall indicate conspicuously that the submission is for *in camera* review only.

IT IS SO ORDERED.

DATED:  October 2, 2014.

_____
UNITED STATES DISTRICT JUDGE